The Chief Justice

delivered the Opinion of the Court.
This appeal brings up for revision, a decree for damages against the owners of a boat used as a ferry boat on the Ohio River, between Louisville in this State and Jeffersonville in Indiana—rendered on the ground that their ferryman—though, without their knowledge or authority—had, in violation of a statute of 1824, permitted a slave of the appellees to pass, on the boat, without their authority, from the Kentucky to the Indiana shore, whence he had fled to Canada.
The charge made in the bill against the officer of the boat, was denied by the answers, and only two witnesses deposed in support of it. Neither of them stated that he saw the slave cross the river on the boat; each of them only swore that he saw the slave on the boat before it had left the Kentucky shore, and that he saw the boat cross to the opposite shore. The same witnesses stated, also, that they heard, not long afterwards, that the slave had runaway, and they had never seen him since. And another witness swore that he had since seen the slave in Canada.
It does not appear that any one of these witnesses was intimate in the family of the owners. And such facts, thus only proved, are certainly very far from being conclusive proof, either of the charge of permitting the slave to pass on the boat to Indiana, or of the allegation that the slave, if he did then so pass, did not repass, but then fled for Canada.
But a jury, empanneled under an act of 1827, having decided these questions in favor of the appellees, we should hesitate to disturb the verdict.
These facts being thus ascertained, the Chancellor, having jurisdiction in rem to enforce the lien given by *51 the act of 1824, on the boat, had authority, in our judgment, to render a personal decree against the owners of the boat, who had placed it, by sale or otherwise, beyond the power of the Court; for the lien given by the law, placed the owners of the boat virtually in the attitude of mortgagors for the indemnity of persons who might be subjected to loss in consequence of the wilful or negligent violation of the act of 1824, by their carrier; and therefore as, by their own voluntary act, they deprived the Chancellor of jurisdiction over the boat, which was worth more than the amount of damages as assessed, the principles of equity seem to have authorized a decree against them personally for that amount, in lieu of a decree in rem, although their only original liability under the statute, may have been that of the lien attached to their boat.
Instructions that the jury may compare the value of the slave and his hire, with the probability of his recaption, are erroneous.
But it seems to us, that the Chancellor did not properly define the true criterion of assessment, in instructing the jury, as he did, that they should “compare the value of “the slave and his services with the probability of recaption.” This was somewhat uncertain, and may have been delusive.
If the slave be hopelessly lost, his value is the utmost amount to which the appellees, as owners of him, can be entitled. Nevertheless, according to the instruction, as the jury may have understood it, they might have assessed more than the value of the slave, if they believed, as doubtless they did, that probably he could never be regained by his owners. And, as the amount assessed seems rather larger than the estimated value of the slave, according to the testimony considered altogether—and testimony was also given of the value of his services—we neither know nor should presume that the instruction was not, in fact, delusive and somewhat prejudicial.
Wherefore, the decree is reversed, and the cause remanded for another inquisition.